IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HARRY L. McCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2:07cv870-WKW |
| | ) | (WO) |
| H.G. CROSTHWAIT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  PROCEDURAL HISTORY**

In this 42 U.S.C. § 1983 action, Harry L. McCall ("McCall") claims his civil rights were violated during his incarceration in the Montgomery Municipal Jail.  Specifically, he asserts that the defendants violated his constitutional rights by subjecting him to the use of excessive force.  In addition, he brings a state law claim of battery against the defendants. He names as defendants: Bobby Bright, Mayor of the City of Montgomery; Art Baylor, Chief of Police; and H.G Crosthwait, a police officer.

The defendants filed a motion for summary judgment and supporting evidentiary materials addressing McCall's claims for relief.  (Doc. No. 47.)  Upon consideration of the motion, the evidentiary materials filed in support thereof, and the responses in opposition filed by McCall, the court concludes that the defendants' motion for summary judgment should denied with respect to Shaw's excessive force claim against Officer Crosthwait and

granted with respect to the remaining claims against all of the defendants.

## II.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.  *Id.*  To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law.  *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d

1559 (11ᵗʰ Cir. 1987).  It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also De Long Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11ᵗʰ Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues.  All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.  *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11ᵗʰ Cir. 1990). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."  *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11ᵗʰ Cir. 1983).

## III.  FACTS[1]

McCall and his family members were not happy with each other on October 17, 2006. At some point that day, McCall's wife reported to the police that McCall had swung a hatchet at her and punched her.  (Defs' Ex. DX 2, Attach. to Murphy's Affid.)  While McCall's wife was signing a complaint at the police station, the police received another call concerning a domestic dispute between McCall and his daughter. (*Id*.; Defs' Ex. 3, Crosthwait's Affid., pp. 1-2.) Shortly thereafter, Officer Crosthwait went to McCall's residence to arrest him.

---

[1] As recounted by the court, these facts are stated favorably for the plaintiff.  The court makes no factual findings, and the actual facts may be different than those stated here.

(Crosthwait's Affid., p. 1.)

McCall was taken into custody and transported to the Montgomery Police Department. (*Id*., p. 2.) While in the booking area, McCall's hands were cuffed behind his back. (Attach. to Doc. No. 55, McCall's Affid.) McCall complained to officers that the cuffs were too tight and began "moving and standing to ease the pain." (*Id*.) Officer R. A. Wilhoit, a supervisor, instructed Officer Crosthwait to take McCall upstairs to the jail due to his behavior.[2] (Attach. to Doc. No. 47, Defs' Ex. DX 4, Wilhoit's Affid., pp. 1-2.)

Officer Crosthwait escorted McCall onto the elevator. When the elevator door opened, Officer Crosthwait pushed McCall into a steel cell door and a plexiglass window. (Pl's Comp., p. 2; Attach. to Doc. No. 20, Pl's Affid.) McCall immediately requested medical treatment. (Crosthwait's Affid., p. 3.) Although a medical unit arrived at the jail and determined that the plaintiff was not injured, McCall insisted that he receive additional medical assistance at the hospital. (*Id*.) Law enforcement officials subsequently transported McCall to Jackson Hospital. (*Id*.)

In the emergency room, McCall complained of pain in his right shoulder, upper forearm, and elbow. (Defs' Ex. DX 8.) An x-ray of McCall's shoulder indicated no abnormalities. (*Id*.) In addition, an x-ray of his elbow indicated no acute findings. (*Id*.)

---

[2] Generally, the holding area is used to book individuals who are cooperative; however, when an individual is threatening or uncooperative, the subject is taken upstairs to the jail. (Wilhoit's Affid., p. 2.)

Upon his release from the hospital, McCall was diagnosed as suffering from a contusion to his right elbow and shoulder. (*Id*.)  He was instructed to take Ibuprofen and follow-up with his primary physician if needed.  (*Id*.)

The next day, McCall went to his primary physician, Dr. Gilberto Sanchez, complaining that he began suffering from pain in his shoulder and arm, headaches, dizziness, and blurred vision after his head was slammed against a door at the police station.  (Attach. to Doc. No. 55.)   Dr. Sanchez sent McCall for a CT scan of his head and spine.  (*Id*.)  A brain scan indicated a "deformity in the inferior orbital wall on the right suggesting an old blow-out fracture."  (*Id*.)  The scan of McCall's spine indicated a "small calcified posterior spur" and a "small central disc protrusion/herniation which [did] not appear to contact the spinal cord or narrow the spinal canal."  (*Id*.)

## IV.  DISCUSSION

### A. Claims against Mayor Bright and Chief Baylor

The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or on the basis of vicarious liability.  *Gray v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006);  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a

defendant and the alleged constitutional deprivation.  *Zatler v. Wainwright*, *supra*.

Although supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability, *Gray*, *supra*, supervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Supervisory liability under § 1983 occurs "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Id.*  A causal connection may be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Mathews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007); *Cottone*, 326 F.3d at 1360.  Deprivations that constitute wide spread abuse sufficient to constitute notice to the supervising official must be "obvious, flagrant, rampant and of continued duration rather than isolated occurrences."  *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

McCall's complaint is devoid of any specific allegations against Bright and Baylor.

McCall has failed to present any evidence indicating that there is a history of widespread abuse which placed Bright and Baylor on notice of a need to stop an alleged deprivation, that their customs or policies resulted in deliberate indifference to McCall's constitutional rights, or that they directed subordinates to act unlawfully or failed to stop them from doing so. Moreover, it is clear that Bright and Baylor are not in any way involved with the actions about which McCall complains and that these defendants are being sued based on their administrative positions. Thus, to the extent McCall asserts that Bright and Baylor are liable under the theory of respondeat superior or on the basis of vicarious liability, the defendants' motion for summary judgment should be granted.[3]

## B.  The Use of Force

McCall claims that Officer Crosthwaite violated his right to be free from excessive force. The defendants deny that they used excessive force against McCall and maintain they are entitled to qualified immunity.

When evaluating a claim of qualified immunity, the court must first determine

---

[3] In his response, McCall argues that Bright and Baylor failed to allege facts indicating that they provided Crosthwaite adequate training concerning the transport of inmates within the police station. A deliberate indifference claim was not raised in the plaintiff's complaint and will not be considered by the court. Even assuming *arguendo* that McCall had presented such a claim, he has failed to demonstrate a genuine issue of disputed fact. A plaintiff must show that the training program was inadequate, and not simply that it was administered poorly.  *See Oliver v. City of Orlando*, No. 6:06cv1671-Orl-31DAB, 2008 WL 4000863, *4 (M.D. Ala. Aug. 22, 2008); *Duruthy v. City of Miami*, No. 01-4155-CIV-MORENO, 2002 WL 31829586, *2 (S.D. Fla. Dec. 13, 2002).  Moreover, it is arguable that the defendants would be entitled to qualified immunity with respect to this deliberate indifference claim. *See Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir. 1997).

whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197 (2001).  While the facts indicate that McCall had already been "'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1271-72 (M.D. Ala. 2005).  McCall was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked into the Montgomery Municipal Jail.  In addition, he had not made an initial appearance before a judge.  Thus, the alleged application of excessive force in this case occurred while McCall was in a "legal twilight zone." *Calhoun, supra.*  An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274.  Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case.  *Id.  See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (analyzing plaintiff's claim that she was subjected to the use of excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would

believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  When balancing the necessity of using some force, a court must evaluate a number of factors, including (1) the need for the application of force, *i.e.*, whether the individual posed an immediate threat to the safety of the officers or others,(2) the relationship between the need and amount of force used;  and (3) the extent of the injury inflicted.  *See Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002) (citing *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)).  "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

McCall alleges that, although he did not physically threaten Officer Crosthwaite, the defendant pushed him with such force that he fell into a steel door and plexiglass window, injuring the orbital wall of his right eye, as well as his spine, right elbow, and shoulder. Consequently, McCall has alleged the deprivation of a constitutional right.  *See Saucier*, *supra*.

Officer Crosthwaite denies that he used excessive force against McCall.  In support of this assertion, Officer Crosthwaite argues he utilized force in response to McCall's

aggressive actions and used only that amount of force necessary to control McCall.  The

plaintiff, however, contends that Officer Crosthwaite employed force which was excessive,

unprovoked, and unjustified.  Plainly, there is a factual dispute concerning whether there was

a need for the use of force and whether the force used was excessive under the circumstances.

Because there are genuine issues of fact, the court declines to decide the qualified immunity

issue at this stage of the proceedings.  *See Cottrell v. Caldwell*, 85 F.3d  1480, 1487-88 (11th

Cir. 1996);  *Jones v. City of Atlanta*, 192 Fed. Appx. 894 (11th Cir. 2006).  Based on the

forgoing, the motion for summary judgment with respect to the Fourth Amendment claim

against Officer Crosthwaite should be denied.

## C.  The State Law Claim

To the extent McCall asserts a battery claim for damages against the defendants in

their official capacities, he is entitled to no relief in this court.  Pursuant to ALA. CODE §§ 11-

47-23 and 11-47-192, no claim will lie against a city or town for personal injury unless a

sworn statement by the party injured is filed with the city clerk within six months of the date

of injury.[4]  It is undisputed that McCall did not file a sworn statement with the Clerk of the

---

[4]ALA. CODE § 11-47-192 reads as follows:

No recovery shall be had against any city or town on a claim for personal injury received,
unless a sworn statement be filed with the clerk by the party injured or his personal
representative in case of his death stating substantially the manner in which the injury was
received, the day and time and the place where the accident occurred and the damages
claimed.

ALA. CODE § 11-47-23 provides, in pertinent part:

City of Montgomery within six months of his arrest.[5]  The law is well-settled in Alabama that a sworn statement is a prerequisite before a suit against a city or municipality is allowed to proceed.  *See Shows v. Morgan*, 40 F. Supp. 2d 1345, 1365 (M.D. Ala. 1999) (dismissing state law claims against city and its officers in their official capacity because of plaintiff's failure to comply with Alabama's notice-of-claim statutes);  *Poe v. Grove Hill Mem'l Hosp. Bd.*, 441 So. 2d 861, 863 (Ala. 1983) ("Therefore, to satisfy the statutory requirement, a plaintiff in a tort action against a municipality must file a sworn statement with the clerk within six months from the accrual of the claim."). *See also Cox v. City of Birmingham*, 518 So. 2d 1262, 1264 (Ala. 1987) (statement must be sworn).

Actual notice of a claim does not replace the statutorily required notice.  "Mere knowledge of the incident resulting in the injury does not satisfy the objectives of the notice-of-claim statute."  *Large v. City of Birmingham*, 547 So. 2d 457, 458 (Ala. 1989). *See generally City of Montgomery v. Weldon*, 195 So. 2d 110, 112 (Ala. 1967) (plaintiff could not satisfy the notice of claim requirement "even though he had sent a letter to city officials

---

All claims against the municipality . . . shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred.  Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Alabama law is clear that these sections are to be considered *in pari materia*.  *Poe v. Grove Hill Mem'l Hosp. Bd.,* 441 So. 2d 861 (Ala. 1983); *Harris v. City of Montgomery*, 435 So. 2d 1207 (Ala. 1983).

[5] The parties' evidentiary materials concerning the date the Clerk received the notice are somewhat conflicting.  McCall's evidentiary materials indicate that his attorney submitted a notice of claim to Montgomery City Hall on April 17, 2007.  (Attach. to Doc. No. 55.)  The defendants' copy of the notice of claim indicates that the document was received by the city clerk on April 18, 2007.  (Defs' Ex. DX 1.)  Nonetheless, neither April 17, 2007, nor April 18, 2007, however, fall within the 180-day limitations period.

detailing the accident and his injuries, principally because he had not stated the amount of damages claims and had not sworn to the statement."). Thus, the court concludes that the defendants' motion for summary judgment with respect to McCall's battery claim against Bright, Baylor, and Crosthwaite in their official capacities, as well as the City of Montgomery, should be granted.

The defendants argue that, with respect to the state law claims against them in their individual capacities, they are entitled to immunity on the basis of discretionary function or state-agent immunity under Alabama law. Alabama Code § 6-5-338 provides that a duly appointed state, county, or municipal police officer "shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties." No immunity is available, however, "'when the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" *McCray v. City of Dothan*, No. 01-15756-DD, 2003 WL 23518420, at *7 (11th Cir. 2003) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). The court notes that qualified immunity under federal law and state-function immunity under Alabama law are not the same; federal immunity employs an objective, reasonable-officer standard, while state immunity is a subjective inquiry into what the defendant officer actually believed. *McCoy*, *supra* (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 9 (11th Cir. 2001)).

As previously discussed, there is a genuine issue of fact concerning whether Officer Crosthwait shoved McCall into a steel cell door and plexiglass window without provocation. Officer Crosthwait contends that McCall refused to step out of the elevator and made an aggressive move toward him;  McCall, however, asserts that he did not physically threaten Officer Crosthwait and that the defendant pushed him with such force that he injured his right eye, elbow, and back.  Thus, under the evidence presented, a fact finder could conclude that Officer Crosthwait was in a position to discern that McCall made no offensive move justifying the use of force.  *See McCray*, *supra.*  Therefore, the shoving of McCall into a steel door and plexiglass window, as Crosthwait is accused of doing, supports an inference of action with malice.  *Id*. (citing *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000) (Malice "may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful.")) Given there are genuine issues of disputed fact, the court declines to decide the issue of state-function immunity at this stage of the proceedings.  Consequently, the motion for summary judgment with respect to McCall's battery claim against the defendants also should be denied.

## V.  CONCLUSION

Accordingly, it is ORDERED as follows:

1.      To the extent the plaintiff claims that Officer Crosthwaite used excessive force

13

against him in the Montgomery Municipal Jail in violation of the Fourth
Amendment, the motion for summary judgment be DENIED.  (Doc. No. 46.)

2.      To the extent the plaintiff sues the defendants in their official capacities with
respect to the state law battery claim, the motion for summary judgment is due
to be GRANTED.  (Doc. No. 46.)

3.      To the extent the plaintiff sues the defendants in their individual capacities
with respect to the state law battery claim, the motion for summary judgment
is due to be DENIED.  (Doc. No. 46.)

4.      The motion for summary judgment with respect to the remaining claims
against the defendants be GRANTED.  (Doc. No. 46.)

5.      The excessive force claim against Officer Crosthwaite and the state law battery
claim against Officer Crosthwaite, Bright, and Baylor be set for a jury trial.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before
November 3, 2008**.  Any objections filed must specifically identify the findings in the
Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections
will not be considered by the District Court.  The parties are advised that this
Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of October, 2008.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE