IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HARRY L. MCCALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:07-CV-870-WKW [WO] |
| ) | |
| H.G. CROSTHWAIT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the court is the Recommendation of the Magistrate Judge (Doc. # 56) on Defendants' motion for summary judgment (Doc. # 46). With the motion, Defendants filed a supporting memorandum with exhibits. (Doc. # 47.) Plaintiff Harry L. McCall ("McCall") filed a response (Doc. # 54), and a brief, with an exhibit, opposing summary judgment (Doc. # 55). The Magistrate Judge entered a recommendation that summary judgment be denied in part and granted in part (Doc. # 56, at 13-14), to which Defendants objected and requested leave of court to supplement the record (Doc. # 57). Their request to supplement the record was granted (Doc. # 58), and Defendants filed a certified copy of the complete medical record provided to them by a Dr. Gilberto Sanchez ("Dr. Sanchez") (Doc. # 59). For the following reasons, the Magistrate Judge's recommendation is due to be rejected in part and adopted in part.

The Magistrate Judge recommends denying summary judgment on the claim that Defendant Officer H.G. Crosthwait ("Officer Crosthwait") used excessive force against

McCall when he was in the Montgomery Municipal Jail, in violation of the Fourth Amendment to the United States Constitution.[1] (Recommendation 13-14.) McCall was taken into custody for domestic violence and transported to the Montgomery Police Department.[2] (Recommendation 3-4.) McCall claims that Officer Crosthwait pushed him into a steel cell door and a plexiglass window when moving from an elevator. (Recommendation 4.) A medical team on site found that McCall had sustained no injuries, but he insisted on medical assistance from the hospital, which was granted. (Recommendation 4.) McCall complained of pain in his right shoulder, upper forearm and elbow, but x-rays indicated no abnormalities in the shoulder, and no acute findings in his elbow. (Recommendation 4.) McCall's only injuries were a contusion to his right elbow and shoulder, and he was told to take ibuprofen and follow up with his primary physician if needed. (Recommendation 5.)

The next day, McCall complained to Dr. Sanchez that he was suffering from shoulder and arm pain, headaches, dizziness, and blurred vision from, as he claimed, being slammed against the door. (Recommendation 5.) Dr. Sanchez referred him for CT scans of his head and spine. (Recommendation 5.) The head scan revealed a deformity "suspicious for an old inferior blow-out fracture" in the inferior orbital wall on the right. (Sanchez Complete

---

[1] McCall's claim is brought pursuant to 42 U.S.C. § 1983.

[2] Defendants' objections to the ruling on excessive force go to the legal, not factual rulings of the recommendation. The facts laid out in the "Facts" section of the recommendation, on pages three to five, are thus adopted upon independent review of the record.

2

Records 19.) The spinal scan showed a "small central disc protrusion/herniation which does not appear to contact the spinal cord or narrow the spinal canal." (Sanchez Complete Records 20.) However, there is no indication in the medical records or other admissible testimony as to causation of the old fracture or the disc protrusion. (*See* Sanchez Complete Records.)

The Fourth Amendment protects the "'right to be free from the use of excessive force in the course of an arrest.'"[3] *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). Government officials sued for excessive force, however, can assert qualified immunity. Defendants argue that Officer Crosthwait is entitled to qualified immunity on the excessive force claim, but the Magistrate Judge recommends that qualified immunity not be granted because there is a genuine issue of material fact as to whether the force was excessive or necessary.[4] (Recommendation 10.)

---

[3] The Fourth Amendment also protects against "'harassing and abusive'" behavior which rises to the level of "unreasonable." *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) (quoting *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001)). McCall's claim is only for excessive force.

[4] The recommendation analyzes McCall's claim under the Fourth Amendment, which the parties have not challenged. The recommendation found that at the time of the jail incident, McCall was in a "'legal twilight zone'" because he had already been taken into the jail but had not yet been booked, and had not yet made an initial appearance. (Recommendation 8 (quoting *Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1271-72 (M.D. Ala. 2005) (Thompson, J.)).) *Calhoun* applied the Fourth Amendment to a plaintiff who had already been "'seized' and for all intents and purposes, arrested at the time of the alleged abuses,'" but nevertheless, was not a pretrial detainee because he had not been officially arrested or booked; nor had the plaintiff made an initial appearance before a judge, or been charged with a crime. 360 F. Supp. 2d at 1271-72; *see also Shaw v. Marshall*, No. 07cv606, 2008 WL 1924992, at *7 (M.D. Ala. Apr. 9, 2008) (DeMent, J.). The Fourth Amendment standard is "commonly an easier standard for a plaintiff to meet" than the Fourteenth Amendment's requirement of deliberate indifference to a substantial risk of harm. *Hicks*, 422 F.3d at 1254 n.7.

Qualified immunity is more than "a mere defense to liability" – it is immunity from suit. *Galvez v. Bruce*, F.3d , No. 06-02176, 2008 WL 5246102, at *3 (11th Cir. Dec. 18, 2008) (quoting *Scott v. Harris*, 127 S. Ct. 1769, 1773 n.2 (2007)). Under qualified immunity, government officials acting pursuant to a discretionary function[5] are protected from civil liability if the conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The "'threshold'" question of whether the officer violated a constitutional right must be resolved before considering whether the violation was clearly established. *Galvez*, 2008 WL 5246102, at *3 (quoting and citing *Scott*, 127 S. Ct. at 1774). Qualified immunity is warranted in excessive force cases "'unless application of the standard would inevitably lead every reasonable officer [in defendant's position] to conclude the force was unlawful,'" *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994)). *Galvez*, 2008 WL 5246102, at *5. Officer Crosthwait is entitled to qualified immunity in this case because there was no Fourth Amendment violation.

The use of *de minimis* force constitutes a violation of the Fourth Amendment only if the officer was not entitled to arrest or detain the plaintiff. *Reese*, 527 F.3d at 1272. McCall

---

[5] The parties do not dispute that Officer Crosthwait was performing discretionary functions. (Objections to Recommendation 3-4.) The burden is on McCall then to prove qualified immunity does not apply. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007).

has not challenged the basis for his arrest. Where probable cause is not challenged, the question of whether force was excessive is a question of whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances [he] faced at the time."[6] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Those facts and circumstances include "'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396); *see also Galvez*, 2008 WL 5246102, at *4.[7]

*De minimis* force, without more, however, cannot constitute a Fourth Amendment violation if the basis of the arrest is not challenged. *Nolin*, 207 F.3d at 1257 (reaffirming that after *Graham*, the *de minimis* principle still applies);[8] *Reese*, 527 F.3d at 1272. Under the *de minimis* principle, "a minimal amount of force *and* injury . . . will not defeat an officer's

---

[6] The reasonableness inquiry is a "'careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Lee*, 284 F.3d at 1197 (11th Cir. 2002) (internal quotation marks omitted).

[7] The Eleventh Circuit's test for excessive force prior to *Graham* is still valid as to three of the factors courts should consider: "(1) the need for the application of force; (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted," *Lee*, 284 F.3d at 1198. *Id.* at 1198 n.7; *see also Nolin*, 207 F.3d at 1256 n.2 ("The *Graham* Court did not establish a precise test for identifying excessive force . . . ."). The recommendation addresses the excessive force factors as articulated by this Eleventh Circuit test. (*See* Recommendation 9-10.)

[8] In reversing a district court's ruling to the contrary, *Nolin* reaffirmed the *de minimis* principle and three circuit opinions that applied it after *Graham* to reverse district courts that denied qualified immunity. *Nolin*, 207 F.3d at 1257 & 1258. According to *Nolin*, one of those cases, *Post*, "refined *Graham* by concluding that in making the highly fact-intensive excessive force inquiry, a court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury." *Nolin*, 207 F.3d at 1257 n.3.

immunity in an excessive force case." *Nolin*, 287 F.3d at 1258 (emphasis added). Indeed, even if the force was unnecessary, if "the actual force used and the injury inflicted were both minor in nature . . . . the application of the excessive force standard would not inevitably lead an official in [the defendant's] position to conclude that the force was unlawful." *Id.* at 1256-57 (discussing and quoting *Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997) (per curiam)); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).[9]

In McCall's case, the hospital found no injuries after the jail incident, aside from a contusion to his right elbow and shoulder. Even if the contusion was caused by the incident, and not by any immediately preceding domestic dispute, the injury was minor. *See, e.g.*, *Vinyard*, 311 F.3d at 1349 n.13 (noting a strong argument that "minor bruising" is *de minimis* injury); *Nolin*, 207 F.3d at 1258 n.4 (finding *de minimis* force when "minor bruising" along with minimal force); *Jones*, 121 F.3d at 1460 (finding that the plaintiff's pain from lifting his arms because of a prior stroke, and his pain from an arthritic knee after having his legs kicked apart was "minor" injury); *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (per curiam) (describing "skin abrasions" as a minor injury, though they were "skin abrasions for which [the plaintiff] did not seek medical treatment"). The scans taken after McCall's next-day visit with Dr. Sanchez exposed only two problems. The first, found by

---

[9] In *Galvez*, the court analyzed the plaintiff's excessive force Fourth Amendment claim under the *Graham* factors and not the *de minimis* principle. 2008 WL 5246102. The *de minimis* principle, however, was clearly inapposite given the facts of the case. The office dragged the plaintiff outside and slammed him into the corner of a concrete structure, causing "severe" pain, and "serious" injuries (broken ribs and a leaking aneurysm). *Id.* at *4, 6 (likening the force to "significant" force).

the head scan, was a "deformity in the inferior orbital wall on the right suspicious for an *old inferior blow-out fracture.*" (Sanchez Complete Records 19 (emphasis added).)  The report, thus, cuts against establishing any causation between the incident and injury.  The second problem, found by a spinal scan, was "a small central disc protrusion/herniation which does not appear to contact the spinal cord or narrow the spinal canal." (Sanchez Complete Records 20.)  There is no indication in the medical records, or other testimony, that the spinal finding could have been caused by Officer Crosthwait's actions.  Indeed, there is insufficient evidence to adjudicate on the severity, much less the causes of the injury.  It should also be noted that "'[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown at the time.'" *Durruthy*, 351 F.3d at 1094 n.10 (quoting *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2003)).  From the record now before the court, the injuries McCall incurred were only minimal.

The force Office Crosthwait exerted was also minimal.  "The minor nature of [an] injury [can] reflect[] that minimal force was used . . . ." *Gold*, 121 F.3d at 1446 (in the context of handcuffing); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (describing the type of injury as a way of showing that force was *not de minimis*).  The Eleventh Circuit has found *de minimis* force and qualified immunity in the following circumstances: when an officer put a foot on the face of the plaintiff, who was face down on the pavement, after he asked why he was being arrested, *Crosby v. Monroe County*, 394 F.3d

7

1328, 1334-35 (11th Cir. 2004); when the plaintiff was grabbed and shoved a few feet against a vehicle while pushing a knee against his back and pushing his head into the van and searching the groin area in an uncomfortable way, *Nolin*, 207 F.3d at 1258 n.4; when the plaintiff's legs were kicked apart, requiring him to raise his arms, and pulling his wallet from his pants, *Jones*, 121 F.3d at 1460; and when tight handcuffs were on the plaintiff's wrists for twenty minutes causing pain and skin abrasions, *Gold*, 121 F.3d at 1446. *See also Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (per curiam) (finding the "temporary pain" and "no treatment" and "no lasting injury" of a rough search of the genitals, and pushing a defendant against a car and holding his head down, to be *de minimis*); *cf. Vinyard*, 311 F.3d at 1349-50 (finding excessive force when officer used pepper spray on the handcuffed plaintiff who was in the patrol car but noting that it was the *pepper spray* that turned *de minimis* force, like grabbing the arm and causing minor bruising, into excessive force, *id.* at 1349 n.13).

In *Vinyard*, the Eleventh Circuit held that the defendant's force at the jail was *de minimis*. 311 F.3d at 1348 n.13. When Vinyard arrived at the jail, the defendant "dragged Vinyard inside, either by her shirt, her arm or her hair." *Id.* at 1344. This force was *de minimis* even though the arrest had proceeded from the initial seizure to the processing stage. In *Post*, the Eleventh Circuit stated that pushing the plaintiff against the wall after he had been handcuffed and taken outside "might have been unnecessary" but was not "plainly unlawful," and the court awarded qualified immunity. 7 F.3d at 1559-60; *Nolin*, 207 F.3d

8

at 1258 ("We again hold, as we did in a line of cases beginning with *Post*, that a minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case" and citing *Post* on the above-referenced point, *id.* at 1256).

Whether a plaintiff is restrained bears on whether the force used against him was *de minimis*. *See Lee*, 284 F.3d at 1199; *see also Durruthy*, 351 F.3d at 1094 (distinguishing cases where plaintiff was restrained and where he was not). In *Lee*, the Eleventh Circuit allowed an excessive force claim to go forward on summary judgment because the police slammed the plaintiff's head into the pavement after he was fully secured. 284 F.3d at 1199 (discussing *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (where the evidential foundation was that officers "repeatedly hit [the plaintiff's] head on the pavement, kicked him, and knocked him unconscious" after he was handcuffed, *id.* at 1233)). The police had slammed the plaintiff's head against a truck after she had been "arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed." *Lee*, 284 F.3d at 1199 (distinguishing *de minimis* cases because they did not involve *severe* and disproportionate force after the arrest had been fully effected, the plaintiff secured, and the danger vitiated). The court denied qualified immunity in *Priester* because the officer allowed a dog to attack an already subdued plaintiff lying on the ground, and in *Smith*, because the officer broke the arm of an arrestee who "'docilely submitted'" to a request to get down. *Id.* (discussing *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) and *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997)).

9

For all of these cases, however, the force was not minor. Violence to the head (directly pushing it against a very hard surface) and breaking limbs are not minimal force. As the Eleventh Circuit recently stated, the "lesson" of *Lee* "is that qualified immunity is not available to officers who subject arrestees to *significant* force after 'the arrest ha[s] been fully effected, the arrestee completely secured, and all danger vitiated.'" *Galvez*, 2008 WL 5246102, at *6 (emphasis added) (quoting *Lee*, 284 F.3d at 1199-2000). It is the "[u]se of *significant* force on an arrestee who would be considered by any reasonable police officer to be fully secured" that is "'wholly unnecessary'" for law enforcement purposes. *Id.* (quoting *Lee*, 284 F.3d at 1199).

McCall's contention is that Officer Crosthwait "pushed him with such force that he fell into a steel door and plexiglass window." (Recommendation 9.) Officer Crosthwait claims that his force was proportional to the amount of force necessary to control McCall, who had taken aggressive actions. (Recommendation 9-10.) This tension may give rise to a factual dispute over whether the force was necessary (Recommendation 10), but if the force and injury were minimal, the *de minimis* principle applies regardless of whether the force was necessary. Given the examples of when force has been found to be *de minimis* in this circuit, the force in this case was *de minimis even if* the officer pushed McCall into the door unprovoked. (*Contra* Recommendation 10.)[10] The force Officer Crosthwait applied was a

---

[10] In other words, McCall has no claim as a matter of law, even taking his allegation that he was pushed or shoved unprovoked as true, and finding separately, that he has failed to support his allegation, for summary judgment purposes, that he was more than minimally injured (*contra* Recommendation 9).

push or shove into a door and plexiglass window. This action was taken not while McCall was standing still but upon exiting an elevator. McCall was handcuffed, but Officer Crosthwait did not bang McCall's head against anything, or send a ferocious animal after him. McCall was not slammed, and was not pushed into harm's way. His lack of injury is indicative of minimal force. Though the nonexistence of a serious injury does not jeopardize an excessive force claim if the *force* was more than minimal, *Lee*, 284 F.3d at 1200, the absence of injury can signal whether the force was minimal.

As the Supreme Court has stated, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The excessive force inquiry provides a buffer for officers who are often acting on incomplete information and making split-second decisions. *Crosby*, 394 F.3d at 1334 (citing *Graham*, 490 U.S. at 396-97). Ruling that McCall has shown enough here for excessive force would erode the *de minimis* principle that helps maintain that buffer. The force that Officer Crosthwait applied to McCall was *de minimis*, and for that reason, Officer Crosthwait is entitled to qualified immunity because there was no constitutional violation.

Accordingly, it is ORDERED as follows:

(1)   The recommendation (Doc. # 56) is REJECTED and Defendants' objections (Doc. # 57) are SUSTAINED with respect to McCall's § 1983 claim against Officer

11

Crosthwait in his individual capacity for use of excessive force.  Defendants' motion for summary judgment (Doc. # 46) is therefore GRANTED with respect to that claim.

(2) There being no objections to the recommendation on the excessive force claims against Defendant Mayor Bobby Bright and Chief of Police Arthur Baylor, and upon an independent review of the record, the recommendation (Doc. # 56) that the Defendants' motion for summary judgment be granted is ADOPTED and the motion (Doc. # 46) is GRANTED, with respect to those claims.

(3) Having dismissed the federal claims, the court declines to exercise supplemental jurisdiction over the state-law claims.  28 U.S.C. § 1367(c)(3).  The recommendation (Doc. # 56) is therefore REJECTED with respect to the state-law claims, and they are DISMISSED for lack of jurisdiction.  The Clerk of the Court is DIRECTED to close this case.

DONE this 23rd day of December, 2008.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE